COPY

1  JOHN M. McCOY III, Cal. Bar No. 166244
   Email: mccoyj@sec.gov
2  GREGORY C. GLYNN, Cal. Bar No. 39999
   Email: glynng@sec.gov
3  FINOLA H. MANVELIAN, Cal. Bar No. 180681
   Email: manvelianf@sec.gov
4  MARSHALL S. SPRUNG, Cal. Bar No. 188253
   Email: sprungm@sec.gov
5  MELISSA GRANT, Cal. Bar No. 205633
   Email: grantm@sec.gov
6  CATHERINE W. BRILLIANT, Cal. Bar No. 229992
   Email: brilliantc@sec.gov

7
   Attorneys for Plaintiff
8  Securities and Exchange Commission
   Rosalind R. Tyson, Regional Director
9  Andrew G. Petillon, Associate Regional Director
   5670 Wilshire Boulevard, 11th Floor
10 Los Angeles, California 90036
   Telephone: (323) 965-3998
11 Facsimile: (323) 965-3908

12

13                  UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15 SECURITIES AND EXCHANGE           Case No.  CV09-01533 R  JTLx
   COMMISSION,
16                                   COMPLAINT
           Plaintiff,
17
          vs.
18
   DIVERSIFIED LENDING GROUP, INC.;
19 APPLIED EQUITIES, INC.; and BRUCE
   FRIEDMAN,
20
           Defendants,
21
          and
22
   TINA M. PLACOURAKIS,
23
           Relief Defendant.
24

25

26

27

28

FILED
2009 MAR -4  PM 3: 58
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY___

1    Plaintiff Securities and Exchange Commission ("Commission") alleges as

2  follows:

3                              **JURISDICTION AND VENUE**

4    1.    This Court has jurisdiction over this action pursuant to Sections 20(b),

5  20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§

6  77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the

7  Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1),

8  78u(d)(3)(A), 78u(e) & 78aa.  Defendants have, directly or indirectly, made use of

9  the means or instrumentalities of interstate commerce, of the mails, or of the

10  facilities of a national securities exchange, in connection with the transactions,

11  acts, practices, and courses of business alleged in this Complaint.

12    2.    Venue is proper in this district pursuant to Section 22(a) of the

13  Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C.

14  § 78aa, because certain of the transactions, acts, practices, and courses of conduct

15  constituting violations of the federal securities laws occurred within this district,

16  defendants Diversified Lending Group, Inc. and Applied Equities, Inc. are located

17  in this district, and defendant Bruce Friedman resides and transacts business in this

18  district.

19                                    **SUMMARY**

20    3.    This matter involves an ongoing fraudulent investment scheme

21  perpetrated by Diversified Lending Group, Inc. ("DLG"), an entity located in

22  Sherman Oaks, California; its wholly owned subsidiary, Applied Equities, Inc.

23  ("AEI"); and its principal, Bruce Friedman ("Friedman") (collectively, "DLG").

24  From at least May 2004 through the present, DLG has raised at least $ 216 million

25  by offering and selling securities in the form of one or five year "Secured

26  Investment Notes" (the "Notes") to hundreds of investors nationwide, many of

27  whom are older Americans.

28

1      4.      In offering and selling the Notes, defendants are violating the

2  antifraud provisions of the federal securities laws by misrepresenting their use of

3  investor proceeds. According to written materials created and maintained by

4  Friedman and distributed by DLG and AEI, and oral representations made by

5  nationwide network of insurance agents and unregistered salespeople trained by

6  defendants, DLG is primarily in the business of acquiring, rehabilitating, and

7  operating income-producing "scratch and dent" (*i.e.*, damaged and distressed) real

8  property. Defendants represented that investor funds would finance DLG's

9  "investment pool," which would in turn function as the source of capital for DLG's

10  real estate and mortgage lending ventures.

11      5.      In reality, DLG did not invest DLG investor money as represented.

12  DLG instead diverted a substantial amount of investor money to undisclosed

13  business ventures or investments unrelated to real property or mortgage lending,

14  including Friedman's charitable foundation, equity securities, a feature film listing

15  Friedman as executive producer, and various businesses operated by affiliates and

16  Friedman's family members and friends.

17      6.      Additionally, Friedman has been misappropriating millions of dollars

18  from DLG for his personal use. Of the approximately $216 million raised from

19  investors since 2004, Friedman misappropriated at minimum $17 million to

20  support his lavish lifestyle, including purchases of a luxury home, cars, vacations,

21  jewelry, and designer clothing and accessories. Over $275,000 in investor funds

22  has also been misappropriated for the personal use of Tina Placourakis, who, on

23  information and belief, is alleged to be Friedman's girlfriend.

24      7.      Defendants have thus violated and are violating the antifraud

25  provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section

26  10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17

27  C.F.R. § 240.10b-5. By this action, the Commission seeks a temporary restraining

28  order and preliminary and permanent injunctions prohibiting further violations,

1   appointment of a receiver over the entity defendants, and an order freezing the

2   defendants' assets, prohibiting Friedman and DLG access to and control of

3   investor funds deposited at DLG's direction in accounts held "for the benefit of"

4   investors at First Commerce Bank and First Regional Bank, ordering disgorgement

5   of the defendants' and relief defendant's ill-gotten gains, and civil penalties.

6                                  **THE DEFENDANTS**

7        8.      **Diversified Lending Group, Inc.** is a closely held California

8   corporation, with its principal place of business in Sherman Oaks, California.

9   Neither DLG nor its securities is registered with the Commission.  DLG is licensed

10  by the California Department of Real Estate.

11       9.      **Applied Equities, Inc.** is a California corporation and a wholly

12  owned subsidiary of DLG, with its principal place of business in Sherman Oaks,

13  California.  AEI is not registered with the Commission.  AEI is licensed by the

14  California Department of Insurance.

15       10.     **Bruce Friedman**, age 59, resides in Los Angeles County, California.

16  He is the president, CEO, and sole shareholder of DLG, and through DLG controls

17  AEI.  Friedman may have been a real estate broker licensed by the California

18  Department of Real Estate, but that license expired in 2000.  Friedman controls

19  DLG's operations, its "investment pool," and the offering and sale of DLG's

20  Notes.  Friedman is also a signatory on all of DLG's and AEI's bank accounts.

21  Friedman is not registered with the Commission.  In 1981, Friedman was convicted

22  by the State of California for grand theft of personal property and was incarcerated

23  for 23 months.

24                               **RELIEF DEFENDANT**

25       11.     **Tina Placourakis ("Placourakis")** resides in Scottsdale, Arizona

26  and, on information and belief, is alleged to be Friedman's girlfriend.  Since April

27  2007, approximately $275,000 of DLG investor funds has been transferred to

28  Placourakis.

                                        3

1

**THE FRAUDULENT SCHEME**

2  **A.    Overview and Nature of the Purported Investment**

3        12.    Friedman formed DLG, a purportedly income-producing "scratch and

4  dent" (i.e., damaged and distressed) real estate business, in May 2004 and acquired

5  AEI as its wholly-owned subsidiary shortly thereafter.  DLG describes itself as a

6  "boutique mortgage banking firm with more than 80 years experience," and AEI as

7  DLG's investment servicing division.  Defendants represent that DLG sells its

8  Notes to generate capital for DLG's so-called "investment pool," which

9  purportedly reinvests those funds in real estate and mortgage lending ventures.

10  Investors have the option of "loaning" DLG money by purchasing one-year or

11  five-year Notes.  DLG promises to repay investors their principal and guarantees

12  that investors will receive an additional rate of return of either 9% or 12%

13  compounded monthly.

14        13.    DLG offers and sells its Notes through a nationwide network of

15  insurance agents and unregistered salespeople (the "Agents"), with whom AEI

16  contracts in exchange for various sales commissions.  DLG trains the Agents in

17  DLG's business and carefully controls what representations the Agents make to

18  prospective investors about DLG and the Notes (indeed, Friedman personally

19  trained many of the Agents).  At seminars, workshops, and meetings, the agents'

20  pre-existing clients and other prospective investors are told orally and in writing

21  that the Notes are "a safe," "guaranteed," "solid investment" that can be cashed out

22  on written demand.  Using PowerPoint presentations that defendants have pre-

23  approved, the Agents tell prospective investors that any proceeds from the Notes

24  would be reinvested in real estate and mortgage loans and that DLG guarantees

25  investors' principal and 9% or 12% rates of return.

26        14.    The Agents also provide prospective investors with a "Welcome

27  Packet," which defendants created and maintain.  The packet includes DLG's

28  Information Circular (which appears to be the functional equivalent of a private

4

1  placement memorandum), a pamphlet about DLG, a pamphlet about AEI, an

2  investor application, and two of DLG's most recent monthly investment pool

3  newsletters.  Significantly, the Welcome Packet materials repeat and reinforce the

4  Agent's representations concerning DLG's use of investor proceeds and the Notes'

5  safety and profitability.  For example, the Information Circular states that DLG

6  "invest[s] substantially all of [its] net investable funds and distribution

7  reinvestments in mortgage loans and real property."  The Information Circular

8  further states that DLG's primary objectives are to "preserve your investment" and

9  to provide cash distributions from the rental income earned from DLG properties

10  and the interest income earned from DLG's mortgage loans.

11       15.     In addition, while DLG provided investors with purportedly "audited"

12  financial statements, DLG's auditor does not appear to be licensed by any state, is

13  not registered with the Public Company Accounting Oversight Board, and has just

14  one employee who is also not licensed.

15       16.     Once investors invest in the Notes, defendants have continued to

16  represent to them that their money is being used as represented, that DLG's

17  investments are profitable, that their money is safe, and that their returns of 9% or

18  12% are guaranteed.  First, investors receive an investment contract in which,

19  among other things, DLG guarantees the investors' principal and rate of return.

20  Second, defendants send investors account statements on at least a quarterly basis,

21  which set forth investors' year-to-date account balances and interest payments.

22  Third, defendants send DLG investors a monthly investor mailing that reports

23  DLG's "assets under management" and year-to-date gains and recites DLG's

24  purported three-fold investment philosophy of:

25            1.     Preservation of our investors' capital;

26            2.     Delivering absolute returns; and

27            3.     Having lower volatility than major traditional indices.

28  ///

1      17.     For years, in DLG's Welcome Packet materials and investor

2    communications, defendants have repeatedly represented to investors, despite

3    evidence to the contrary, that DLG "uses only investments in Income Stream Real

4    Estate."  In addition, until very recently, defendants have represented to investors,

5    as well as state securities regulators, that DLG has never failed to pay investor

6    returns and principal.  Even as recently as February 2, 2009, DLG has continued to

7    tout the annual gains of its investments in real estate and mortgage lending,

8    claiming that they have consistently exceeded 21% since 2005.  According to a

9    DLG newsletter dated December 31, 2008 that Friedman presented to prospective

10   Agents, DLG claims to have approximately $281 million of investor funds on

11   deposit, real estate investment properties valued at approximately $325 million, a

12   total of $659.3 million in "assets under management," and a 23.34% year-to-date

13   gain.  These purported gains and asset valuations appear highly suspect given

14   recent market conditions and investor complaints that DLG is unwilling or unable

15   to return their money.

16   **B.    Defendants Falsely Represented That Investor Proceeds Would Be Used**

17        **To Invest In Real Property And Mortgage Loans**

18      18.     Both orally and in written DLG materials, defendants have

19   represented that investor proceeds would be used for real property and mortgage

20   loans.  First, defendants trained the Agents to represent orally to prospective

21   investors that DLG investor proceeds would be used for these purposes.  Second,

22   using written materials created and maintained by DLG and distributed by the

23   Agents, defendants again represented to investors that their money would be

24   pooled and invested in real estate or mortgage loans.  Specifically, the Information

25   Circular that investors receive before investing states – under the heading "OUR

26   BUSINESS STRATEGY" – that:

27        [DLG] will seek to invest substantially all of our net investable funds

28        and distribution reinvestments in real property and mortgage loans,

6

1    after paying applicable fees and expenses.  The allocation of our

2    investments between real property and mortgages will be at the

3    discretion of our Manager depending on the amounts available for

4    investments and investment opportunities.  We anticipate investing

5    approximately 70% of our net investable funds in real property and

6    30% in mortgage loans.

7         19.    The Information Circular reiterates DLG's purported intent to invest

8   70% of investor proceeds in real estate and 30% in mortgage loans under headings

9   entitled "REAL ESTATE PROGRAM OBJECTIVES" and "MORTGAGE

10  PROGRAM OBJECTIVES."  The Information Circular further represents that the

11  purpose behind DLG's investment strategy of 70% in real estate and 30% in loans

12  is to meet its principal investment objectives of:  (1) protecting investors' principal

13  – *i.e.*, "[p]reserv[ing] your capital contributions;" and (2) making profits on the

14  investments that are then provided to investors – *i.e.*, "[p]rovid[ing] cash

15  distributions from the net income earned on our properties [and] mortgage loans."

16       20.    Nothing in the Information Circular states or even suggests that

17  investor funds will be used for business ventures other than real estate and

18  mortgage loans.  In fact, the Information Circular represents that DLG "may not

19  change [its] investment objectives . . . except upon approval of a majority of our

20  Board.  [DLG] has no authority to do anything that would impair our ability to

21  carry on our ordinary business as a mortgage or real property investor."  The

22  Information Circular further represents under the heading "VARIOUS OTHER

23  POLICIES AND PROCEDURES" that "[w]ithout approval of a majority of the

24  Board, we will not . . . change the nature of our business or our investment

25  policies."  DLG's monthly mailings have further reassured investors that their

26  money was being used for real estate and mortgage loan ventures.  Specifically,

27  each monthly mailing repeated the investment objectives set forth in the

28  Information Circular.  In addition, the "INVESTMENT OVERVIEW" section

states that "Diversified Lending Group uses only investments in Income Stream Real Estate."

21.     In reality, defendants did not use investor funds solely to invest in real estate and mortgage loan ventures. Instead, they used investor proceeds for other undisclosed purposes, such as to fund a charitable foundation that Friedman established in his family's name or to purchase millions of dollars in auction rate securities. They also used investor funds to finance undisclosed business activity, such as a $13 million investment in magnetic resonance imaging businesses. Accordingly, defendants' representations that DLG would invest substantially all of its investors' proceeds in real estate and mortgage loan activities were false.

22.     In the DLG investor newsletter dated December 31, 2008 that Friedman recently presented to prospective Agents, DLG altered its longstanding disclosure about the use of investor funds. In a section entitled "COMMENTARY," DLG states that "[w]e have expanded our horizons to include the industries that will benefit most from these [recent economic] changes, alternative energy and healthcare just to mention two." However, this purported disclosure is inadequate at best. First, it appeared years after DLG began using investor funds for these undisclosed business and investment ventures. Second, there is no evidence that this mailing was in fact sent to investors. Third, the disclosure appears in the middle of a long paragraph in extremely small type, and it is at odds with the "INVESTMENT OVERVIEW" section, which appears in standard type and continues to represent that DLG is using investor proceeds for real estate activities. Moreover, the language of the purported disclosure gives no detail as to when DLG invested in these other business ventures, whether the Board approved this significant shift in business strategy as required by DLG's policies, how much was invested in other business ventures, and the potential impact on the safety and profitability of the Notes.

23.     These misrepresentations and omissions are material because they

8

1    address the very purpose of the investment and the use of investor proceeds, which

2    reasonable investors would consider significant in deciding whether to invest in

3    DLG.

4       24.    Furthermore, defendants did not disclose Friedman's prior criminal

5    conviction until forced to do so by regulatory and media scrutiny in December

6    2008. A reasonable investor would consider Friedman's criminal conviction to be

7    material in deciding whether to invest with DLG.

8       25.    Investors have recently made repeated demands for the return of their

9    principal investments, but DLG has been unable or unwilling to return their

10   money. One investor has a filed a civil action against DLG for securities fraud,

11   alleging, among other things, that defendants fraudulently misrepresented that

12   investor funds would only be used for investment in real estate and mortgage

13   lending, that DLG's primary investment objective was to preserve investors'

14   capital, and that investors' proceeds were safe, guaranteed, subject to little risk,

15   and readily liquidated upon demand.

16   **C.   Investor Funds Have Been Misappropriated and Misused by Friedman**

17          **and Placourakis for Personal Expenditures**

18      26.    Bank records and brokerage statements indicate that, from 2004 to

19   present, Friedman has misappropriated at least $17 million of investor funds to

20   finance his extravagant lifestyle. Friedman used these funds to buy lavish

21   vacations, jewelry, designer clothing and accessories, electronics, tickets for

22   sporting events, and a $6.5 million home in Malibu, California.

23      27.    Placourakis, who, on information and belief, is alleged to be

24   Friedman's girlfriend, received at least $275,000 in misappropriated investor funds

25   in 2007 and 2008. Placourakis received $200,000 from DLG in a bank account

26   that she holds jointly with Friedman. In addition, from April 2007 to April 2008,

27   DLG paid Placourakis $75,504 purportedly for "consulting" services despite the

28   fact that Placourakis does not appear to have any connection to DLG's real estate

1 | and mortgage lending business.

2 |     28.    Moreover, Friedman never disclosed to DLG investors that he

3 | transferred investor proceeds from the investment pool to accounts for his own use.

4 | To the contrary, while he was misappropriating millions of dollars of investor

5 | funds, Friedman sent DLG investors monthly mailings representing that DLG

6 | continued to use investor proceeds for real estate and mortgage lending.

7 |     29.    These misrepresentations and omissions are material because they

8 | address the very purpose of the investment and the use of investor proceeds, which

9 | reasonable investors would consider significant in deciding whether to invest in

10 | DLG.

11 | **D.**    **Defendants Acted With Scienter**

12 |     30.    Each of the defendants acted with scienter. As the principal of both

13 | DLG and AEI, Friedman knew or was reckless in not knowing that he and the

14 | Agents represented to DLG investors orally and in writing that investor proceeds

15 | would be used for real estate and mortgage lending ventures when, in reality,

16 | investor proceeds were used for other, undisclosed purposes. Friedman trained

17 | many of the Agents himself, and in doing so instructed them to represent to

18 | investors that their money would be reinvested in real property ventures and

19 | mortgage loans. Friedman continued to make that representation in DLG's

20 | offering and promotional materials and in investor communications even though he

21 | knew, as DLG's sole shareholder and principal, that DLG had diverted a

22 | substantial amount of investor money to undisclosed business ventures or

23 | investments unrelated to real property or mortgage lending, including Friedman's

24 | charitable foundation, equity securities, a feature film listing Friedman as

25 | executive producer, and various businesses operated by affiliates and Friedman's

26 | family members and friends. Additionally, Friedman was the signatory on the

27 | DLG bank accounts to which investor proceeds were transferred and then used for

28 | undisclosed business dealings. Finally, as the signatory to DLG's bank accounts,

10

1    Friedman knew that he was misappropriating investor funds for his personal

2    benefit.  In sum, Friedman made the material misrepresentations and omissions in

3    this case with full knowledge of their false and misleading nature.

### FIRST CLAIM FOR RELIEF

#### FRAUD IN THE OFFER OR SALE OF SECURITIES

#### Violations of Section 17(a) of the Securities Act

#### (Against All Defendants)

8    31.    The Commission realleges and incorporates by reference paragraphs 1

9    through 30 above.

10    32.    Defendants DLG, AEI, and Friedman, and each of them, by engaging

11    in the conduct described above, directly or indirectly, in the offer or sale of

12    securities by the use of means or instruments of transportation or communication

13    in interstate commerce or by use of the mails:

        a.    with scienter, employed devices, schemes, or artifices to defraud;

        b.    obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

        c.    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

23    33.    By engaging in the conduct described above, defendants DLG, AEI,

24    and Friedman violated, and unless restrained and enjoined will continue to violate,

25    Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

26    ///

27    ///

28    ///

## SECOND CLAIM FOR RELIEF

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against All Defendants)

34.     The Commission realleges and incorporates by reference paragraphs 1 through 33 above.

35.     Defendants DLG, AEI and Friedman, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

        a.     employed devices, schemes, or artifices to defraud;

        b.     made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

        c.     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

By engaging in the conduct described above, defendants DLG, AEI and Friedman violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that the defendants committed the alleged violations.

**II.**

Issue orders, in a form consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily and permanently enjoining defendants DLG, AEI and Friedman and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**III.**

Issue in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of defendants DLG, AEI and Friedman; appointing a receiver over defendants DLG and AEI; prohibiting Friedman and DLG access to and control of investor funds deposited at DLG's direction in accounts held "for the benefit of investors" at First Commerce Bank and First Regional Bank; prohibiting each of the defendants from destroying documents; and ordering accountings from each of the defendants.

**IV.**

Order defendants DLG, AEI, Friedman, and relief defendant Placourakis to disgorge all ill-gotten gains from the illegal conduct, together with prejudgment interest thereon.

**V.**

Order defendants DLG, AEI, and Friedman to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**VI.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable

1    application or motion for additional relief within the jurisdiction of this Court.

2    **VII.**

3       Grant such other and further relief as this Court may determine to be just and

4    necessary.

5

6    DATED:  March 4, 2009

                          John M. McCoy III

7                                     Gregory C. Glynn

8                                     Melissa Grant

                                    Catherine W. Brilliant

                                    Attorneys for Plaintiff

9                                     Securities and Exchange Commission

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>PLAINTIFF(S)<br>v.<br>DIVERSIFIED LENDING GROUP, INC.; APPLIED EQUITIES, INC.; and BRUCE FRIEDMAN<br><br><br>DEFENDANT(S).<br>TINA M. PLACOURAKIS, Relief Defendant | CASE NUMBER<br><br>CV09-01533   R   FMX<br><br><br><br>**SUMMONS** |

TO:   DEFENDANT(S):  Diversified Lending Group, Inc.; Applied Equities, Inc.; and Bruce Friedman
      and RELIEF DEFENDANT:  Tina M. Placourakis
      A lawsuit has been filed against you.

Within   20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  John M. McCoy III/Melissa Grant        , whose address is  SEC/LARO, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036        . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   MAR - 4 2009                    By:  **LA'REE HORN**
                                                Deputy Clerk

                                              (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>SECURITIES AND EXCHANGE COMMISSION | **DEFENDANTS**<br>DIVERSIFIED LENDING GROUP, INC.; APPLIED EQUITIES, INC.; and<br>BRUCE FRIEDMAN, Defendants<br>TINA M. PLACOURAKIS, Relief Defendant<br><br>Los Angeles County |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>John M. McCoy III/Gregory C. Glynn/Catherine W. Brilliant/Melissa Grant<br>Securities and Exchange Commission        (323) 965-3998<br>5670 Wilshire Blvd., 11th Floor, Los Angeles, CA 90036 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S.
                                         Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship
                                         of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original    ☐ 2 Removed from    ☐ 3 Remanded from    ☐ 4 Reinstated or    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-    ☐ 7 Appeal to District
     Proceeding        State Court          Appellate Court       Reopened                                                                         District        Judge from
                                                                                                                                                   Litigation      Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No          ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
The Complaint alleges violations of the federal securities laws. 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b) & 17 C.F.R. § 240.10b-5 thereunder.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL<br>PROPERTY | PRISONER<br>PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to | ☐ 710 Fair Labor Standards |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product | ☐ 371 Truth in Lending | Vacate Sentence | Act |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | Liability | ☐ 380 Other Personal | Habeas Corpus | ☐ 720 Labor/Mgmt. |
| ☐ 450 Commerce/ICC | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Property Damage | ☐ 530 General | Relations |
| Rates/etc. | ☐ 150 Recovery of | Slander | ☐ 385 Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. |
| ☐ 460 Deportation | Overpayment & | ☐ 330 Fed. Employers' | Product Liability | ☐ 540 Mandamus/ | Reporting & |
| ☐ 470 Racketeer Influenced | Enforcement of | Liability | BANKRUPTCY | Other | Disclosure Act |
| and Corrupt | Judgment | ☐ 340 Marine | ☐ 422 Appeal 28 USC | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product | 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted | Liability | ☐ 423 Withdrawal 28 | FORFEITURE / | Litigation |
| ☐ 490 Cable/Sat TV | Student Loan (Excl. | ☐ 350 Motor Vehicle | USC 157 | PENALTY | ☐ 791 Empl. Ret. Inc. |
| ☐ 810 Selective Service | Veterans) | ☐ 355 Motor Vehicle | CIVIL RIGHTS | ☐ 610 Agriculture | Security Act |
| ☑ 850 Securities/Commodities/ | ☐ 153 Recovery of | Product Liability | ☐ 441 Voting | ☐ 620 Other Food & | PROPERTY RIGHTS |
| Exchange | Overpayment of | ☐ 360 Other Personal | ☐ 442 Employment | Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 | Veteran's Benefits | Injury | ☐ 443 Housing/Acco- | ☐ 625 Drug Related | ☐ 830 Patent |
| USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- | mmodations | Seizure of | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | Med Malpractice | ☐ 444 Welfare | Property 21 USC | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product | ☐ 365 Personal Injury- | ☐ 445 American with | 881 | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization | Liability | Product Liability | Disabilities - | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal | Employment | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW |
| ☐ 893 Environmental Matters | REAL PROPERTY | Injury Product | ☐ 446 American with | ☐ 650 Airline Regs | (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | Liability | Disabilities - | ☐ 660 Occupational | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION | Other | Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization | ☐ 440 Other Civil | ☐ 690 Other | FEDERAL TAX SUITS |
| nation Under Equal | ☐ 240 Torts to Land | Application | Rights | | ☐ 870 Taxes (U.S. Plaintiff |
| Access to Justice | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- | | | or Defendant) |
| ☐ 950 Constitutionality of | ☐ 290 All Other Real Property | Alien Detainee | | | ☐ 871 IRS-Third Party 26 |
| State Statutes | | ☐ 465 Other Immigration | | | USC 7609 |
| | | Actions | | | |

**FOR OFFICE USE ONLY:**    Case Number: _____    **CV09-01533**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Diversified Lending Group, Inc. - Los Angeles County; Applied Equities, Inc. - Los Angeles County; Bruce Friedman - Los Angeles County | Tina M. Placourakis - Arizona |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  3/04/09

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |